Our final case for today, now this afternoon, is United States v. Washington. Mr. Patton. Good afternoon, Your Honors. Tom Patton on behalf of the defendant appellant Jarvis Washington. The district court here committed plain error when it imposed a sentence on both of the section 922 G1 convictions because the jury had... What is the consequence of this extra sentence? He received an extra 120 month sentence that was ordered to run concurrent. Not an extra 120 months. All of the prison sentences are concurrent, and the dominant sentence is the one for distributing heroin and cocaine, which is 132 months. So the consequence, as far as I can see, consequence of this extra ammunition conviction is a $100 special assessment. Have we ever held that the $100 special assessment meets the miscarriage of justice requirement for plain error review? Yes, in the United States v. Parker, 508 F. 3rd. 434, overruled two prior cases from this court that had found to the opposite, that it found that it was not a miscarriage of justice, given that there was a fully concurrent sentence except for the $100 special assessment. I'll have to look at that. So that was specifically addressed, and that was cited in our brief. And it did reverse prior circuit precedent and was footnoted that pursuant to Circuit Rule 40, it had been circulated. So the cases on which you rely are cases where guns and ammunition are in several different places within a house or an apartment or whatever, a dwelling, a building, and other cases where they're in different places within a vehicle. But here we have some of the stuff up in the apartment, some of the stuff down in the truck. The stuff down in the truck could be driven around to any other location. Why doesn't that count as two locations? Your Honor, admittedly, our case falls somewhere outside of the cases that have said there's multiplicious single possessions. But I would say this, and the government's brief seems to agree with this, that it's a jury question of whether or not there are separate possessions. That that is a question that if the two convictions need to rest on a finding that there are separate possessions, or they're stored separately or acquired on different dates, that's an issue that the jury has to decide. Well, but within limits, you know, because I know your theory is that maybe it was all in the backpack, and so he takes the backpack up to the apartment. But there isn't really any dispute in this case that some of it was in the truck and some of it's in the apartment. Absolutely, Your Honor. So we don't need the jury to resolve that for us. And, you know, if some of it had been in, you know, an apartment in Chicago and some of it had been in a truck in Rockford, we wouldn't be worrying about it either because that would be clearly two different locations. The fact that the truck is parked outside is what begins to make them look closer, but I can't find any cases that say that's not enough to be separate. And it's also intuitively something you can see that there are different risks to having something in the truck that's not stashed in the apartment. Sure, Your Honor. It was a car. It was a Dodge Intrepid car. And look, I understand. I think it gets to the point that the Fourth Circuit made in United States v. Mullins, which we talked about, in saying that you can't, and they say, the acts of possession may not be viewed in a frozen momentary state immediately prior to the seizure, and whether or not there was simultaneous possession or storage or acquisition on different occasions is to be found in the course of the defendant's treatment of the firearms. And so that gets to my point of if they had been following him, the police had been following him down the street because he had outstanding warrants for them, and they knew the car he was driving. So say they're tailing him, looking for a place to stop him. He ends up stopped, gets out of the car with the backpack over his arm, goes into the convenience store to buy a soda or something. Yeah, no, that's not different locations, right? Well, but he's got the backpack with him with the ammunition, and it's with him in the convenience store, and the gun's under the seat in the car. Those are different locations. And so the question is, and I think in this case it becomes a quintessential jury question. Do we want to say that this really is separate storage or not? Because the government's whole theory was Mr. Washington comes over to spend the night at Ms. Sainwright's duplex, goes inside, takes the backpack in with him, and that was what the government argued to the jury. Well, there's more than just the backpack, though. They find the box of ammunition with 25 rounds of .40 caliber stuff. They find baggies. They find heroin and crack. I mean, they find a lot, not just the bag. If it were just the backpack, you might have a stronger case. The government's theory was that Mr. Washington brought all of that stuff with him. None of those items were Ms. Sainwright's. And so he had to get them into the duplex some way. But we don't know when. I mean, he'd had a previous relationship with her. But her testimony was that they had known each other, hadn't had much contact. She had a graduation party to celebrate her graduation from nursing school. He came there. They kind of reacquainted, and then there was an agreement. He'd come over, I believe it was the next night. If it was not the next night, it was one or two. But there's no evidence that he is storing things long term at her residence. Their whole thing was he came over. And, in fact, she testified at the trial that none of those items were in her bedroom when she went to sleep that night. Because her testimony was she had gone laid down to go to sleep. Mr. Washington came after she had laid down. And that none of those items, the ammunition, the drugs, the baggies, none of that was there before he arrived. And so I don't – and that was the government's whole theory was he arrives, brings all that stuff in with him. And they actually argued to the jury he's going to take it all with him when he leaves. And that's how they want to connect what's in the bedroom with what's in the car. And so, I mean, that's the government. That's the theory that got argued to the jury that the jury clearly agreed with by finding him guilty of the four of the five counts. And so while I understand that the fact pattern here is outside cases that have found simultaneous possession, but the point of making it a jury question is the jury gets to decide this. And the different location has to be more than simply it's not in the physical Newtonian sense in the same location. Because a gun in a glove compartment is in a different location. It wouldn't be an odd way of speaking to say that's a different location than the trunk of the car. It's just that's not what we're looking at. That's what I'm saying. By the time you get to, though, a car versus a dwelling place, you are pretty much in a different world. It's certainly more attenuated, but I think that is why if a properly instructed jury had convicted, I don't think I'd win on a challenge to the sufficiency of the evidence. But that's not where we're at. And I don't think you can say it is harmless that the jury wasn't asked to and didn't make that determination. I have a curious question. Maybe you don't know the answer. Is a .40 caliber ammo working a .45 caliber? I do not know the answer to that. I don't know, but I don't think. It seems like there's sort of a separating issue there. Maybe not. It's smaller in circumference. That's the difference in the caliber. It's .4 of an inch instead of .45 of an inch. I don't know whether it works or not. I don't know the answer to that. I just noticed that they distinguished them. But also the government pointed out that it was the same make of ammunition, both the .40 caliber and the .45 caliber. And the .45 caliber ammunition found in the backpack. The .40 caliber ammunition was found in a box on the floor in the bedroom. The .45 caliber stuff found in the bedroom was in the backpack. Those two were the same brand of ammunition. And the .45 brand ammunition was the same ammunition found loaded in the gun that was in the car. Okay, thank you. Good afternoon. May it please the court. I am Talia Bucci, and I represent the United States on this appeal. The district court did not plainly err here in entering judgment and imposing sentence on both counts three and four. Now, if we were not on plain error review, this does strike me as conceptually the same thing that the cases that say don't charge on the basis of every weapon or every bullet rest on. You know, he's got this stuff in his backpack. He's popping up for the night. He's coming back down. It's really one global possession, isn't it? I disagree with you on that, Your Honor. There are two separate possessions. He is possessing the items in count three, so the .45 and .40 caliber ammunition. That he takes in with him in the apartment. He leaves the loaded firearm that's charged in count four in the car. And there are the cases that we've cited in our brief. Gann, Hutchings, and then Verracchia on a duplicity argument, but it's similar in nature here. When you have things that you're storing inside a dwelling versus things that you're storing inside a car, those are two separate locations of possession. And I understand Your Honor's point with, or I believe may have been defense counsel's point with walking into a gas station. That's a different situation than we have here. This isn't a. He didn't leave the car and then get right back into the car. He's spending the night there. He is taking the ammunition with him and storing it with him in that apartment. Yeah, it's a line drawing issue, frankly, because it looks like it was all in the car. He takes it upstairs, some of it upstairs, leaves a little bit behind. I don't know why he chose one thing versus another, but he does that. And then is probably going to pack up and go right back down to the car in the morning. There doesn't seem to be any indication that she's offered to be a long-term stash house or anything. I agree with Your Honor on that. There wasn't evidence presented that he had been keeping their items there for a longer period of time. He is there for the night, though. He has brought these items with him, kept them on his person, and is storing them in the apartment. He didn't leave them in the car where the gun was at. He's storing them inside the apartment in a separate location. And we agree that the jury should have been instructed. There should have been instruction about separate possessions. But even here, a properly instructed jury would have necessarily found separate possessions because the uncontroverted evidence showed that these items were being stored in different locations. Well, it might not necessarily. I mean, actually, your opponent has made a different point, which is that a properly instructed jury might have found either separate possessions or one big possession. Either one of those findings could be thought supported by this evidence. We would disagree on that point. There are two separate locations in which these items are being stored. They're being stored in a home versus in a car. And at some point, if an instruction had been given, the jury would have had to have been given some guidance on how they make this separate locations determination. And the case law shows that when you're storing items in a house and storing other items in a car, those are, in fact, separate locations. So a properly instructed jury would have found there was no dispute about where these items were stored and that they were in separate locations. What about the Fifth Circuit's case, United States against Mesa, where the police find a shotgun in a shed on the defendant's property and they find ammunition in the house and the indictment charges separate counts, but the Fifth Circuit says it's just one big possession. The shed is obviously a different structure. Different structure on the same type of property in that case. It's probably no different in distance than the car and the apartment were here. And I think that comes back to sort of the risk that Your Honor was talking about, that when you're storing something in a car, though, that's to be moved around. That's going to be a separate risk than when you have things in a dwelling. And in the Mesa case, that is both. They're in permanent structures on the same property. And if you look to the Kennedy case. So just to pursue that for a moment, if you had drugs in a house and they happened to have a barn half a mile away from the house and there were more guns in the house and guns in this barn half a mile away, you would say that's all the same possession? You are getting into a line drawing exercise there. That's what we're in. And there is the case in Varechia that is somewhat similar to that in which he's storing the items in a barn. He's going to do an undercover buy. He goes back to the barn, gets the items, takes them in his car, brings them to the location. And there the court found that they were separately or appropriately charged in separate counts. So I agree that there is a line drawing exercise. In this case, the evidence falls squarely on one side of that line. There is no question that he has these items with him overnight in a different location, and he's keeping the gun, the loaded firearm, in the car. I think the jury would have been given some instructions about how to find separate locations, and that's one of the things that, based on the case law, they would have been instructed. And there's no question here that those were separate locations. Unfortunately, your time is running low because I would ask you, if you had more time, what you would recommend for those instructions. Well, and that's a good question. I think they would certainly have to be instructed as to the standard, and then, again, they'd have to be given some guidance from the case law because, as your Honor has pointed out, some of the things in the case law might not necessarily be common sense of what we would think of on separate locations. So I think you would have to give some instruction as to dwellings versus vehicles. Similar to what we've seen in the briefs, all inside one dwelling, that's not going to be separate locations. All inside a car, even if it's in the trunk versus passenger compartment, not different locations. But when you have those in two in the dwelling and in the vehicle, that's going to be separate locations. So they would have to be given some guidance on that. But based on the evidence that was presented, the fact that these were charged in two separate counts, they found him guilty on both counts, and there was no question of where these items were possessed. There was no plain error here than in imposing judgment and sentencing him on both counts. Was this the only occasion he entered the apartment? It was the only occasion that the evidence showed he had been at the apartment for the graduation party. Right. And he had dated the resident at some point. There was a graduation, and then he came back sometime. I don't know what time separation was. Was it the same day? I think it was a little unclear about whether it was later that night or if it may have been the next day. It was certainly within a day or two. He came back to the apartment and spent the night after rekindling their romance at the graduation party. And then with respect to remedy, if your honors do find plain error in this case, and we explained in our brief, a full resentencing would not be necessary here. Sometimes it is, but in this case the sentences were fully concurrent. There's no indication on the record that the court even considered the fact that there were both of these counts. So if your honors do find plain error, which we don't believe there is any plain error, but if your honors did, there's not a need for full resentencing in this case. If your honors have no further questions, I'd end by asking that you affirm the conviction in sentence. All right. Thank you very much. Anything further, Mr. Patton? A brief Google search indicates that .40 caliber weapon ammunition may be able to be fired from a .45 caliber pistol. It's a line drawing exercise, and the case law says on this issue it's the jury that's supposed to be drawing that line and making that determination. They weren't here, and therefore it does affect Mr. Washington's substantial rights, and therefore it was plain error to impose sentence on both 923 counts. Thank you very much. Thanks to both counsel. We'll take the case under advisement, and the court will be in recess. Thank you.